

Except all oil, gas and other mineral deposits in said land, together with the right to prospect for, mine and remove the same according to the provisions of the act of June 1, 1938, as excepted by patent from the United States of America recorded December 8' 1969 in book 4344, page 887 of official records.

PARCEL 15:
The North 330 of the East 330 feet of the East Half, Southeast Quarter, Northeast Quarter, Southeast Quarter, Section 2 Township 11 North, Range 13 West, S.B.B.M. Assessor's Parcel Number (237 132 37)

Excepting therefrom that portion of said land conveyed by Dorothy Morrow in deed recorded January 12 1965 in Book 3803 page 530 of Official Records.

Also except all the coal and other mineral deposits in the lands so entered and patented, together with the right to prospect for, mine and remove the same pursuant to the provisions an limitations of the act of June 1, 1938 (52 Stat. 609), as excepted and reserved in the patent executed by the United States of America recorded January 16, 1961, in Book 3339 Page 85, of Official Records.

## Section 10, Township 11 North, Range 13 West

PARCEL 16:
The East Half, Northwest Quarter, Northwest Quarter, Northwest Quarter, Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-141-02)

Excepting therefrom all oil, gas and other mineral deposits in the land so patented, together wl th the rI ght to prospect for, mine and remove the same pursuant to the provisions of some act of June 1, 1938 as reserved by deed recorded September 20, 1967 in Book 4090, page 851 of official records.

PARCEL 17:
The East Half, Southwest Quarter, Northwest Quarter, Northwest Quarter, Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-141-15)

Excepting therefrom all oil: gas and other mineral deposits in the land so patented, together with the right to prospect for, mine and remove the same according to the provisions of the act of June 1, 1938 (58 stat. 609) as reserved in by the USA. In patent recorded November 28, 1972 in Book 4750, page 484 of official records.

PARCEL 18:
East Half, Southeast Quarter, Southeast Quarter, Northwest Quarter, Section 10 Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 23714125)

Exhibit C to Wind Energy Development and Option Agreement



Except all oil, gas and other mineral deposits, together with the right to prospect for, mine and remove the same according to the Provisions of said Act of June 1, 1938. (Assessor's Parcel Number 23714125) (Document Number 203062616)

PARCEL 19:
The West Half of the Northeast Quarter of the Northwest Quarter of the Northeast Quarter of Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-142-03)

Excepting therefrom all oil, gas and other mineral deposits in said land together with the right to prospect for, mine and remove the same according to the provisions of the act of June 1, 1938 and as reserved by the United States in the patent recorded November 17, 1972 in book 4747, page 619 of official records.

PARCEL 20:
The East Half of the Northeast Quarter of the Northwest Quarter of the Northeast Quarter of Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-142-04)

Expecting therefrom all oil, gas and other minerals as reserved in the patent recorded July 13, 1960 in book 3283, page 553 of the official records.

PARCEL 21:
The East Half, Northwest Quarter, Northeast Quarter, Northeast Quarter of Section 10, Township 11 North, Range 13 West, S.B.B. & M.  (Assessor's Parcel Number 237-142-06)

PARCEL 22:
The East Half, Southwest Quarter, Northeast Quarter,  Northeast Quarter of Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor Parcel No. 237-142-11)

Except all oil, gas and other mineral deposits together with the right to prospect for, mine and remove the same as reserved by the United States of America in patent recorded march 22, 1960 in book 3251 page 444 of official records.

PARCEL 23:
The East Half of the Southeast Quarter of the Northwest Quarter of the Northeast Quarter of Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-142-13)

Excepting therefrom all oil, gas and other mineral deposits together with the right to prospect for, mine and remove the same as were required to be reserved to the United States by the act of June 1, 1938 (52 stat. 609) as amended and reserved in the patent from the United States to bernard miles clayton, recorded august 29, 1961 in book 3410, page 76 of official records.



Exhibit C to Wind Energy Development and Option Agreement



PARCEL 24:
West Half, Southeast Quarter, Northwest Quarter, Northeast Quarter, Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 23714214) (Document Number 202203620)

Excepting therefrom the South Half, East Half, West Half, Southeast Quarter, Northwest Quarter, Southwest Quarter of Section 10

Also Excepting therefrom all oil, gas and other mineral deposits, together with the right to prospect for, mine and remove the same according to the Provisions of said Act of June 1, 1938. As reserved by the United States of America in patent recorded October 26, 1961 in Book 3428, Page 365 of official records.

PARCEL 25:
West Half, Northwest Quarter, Southeast Quarter, Northeast Quarter, Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 23714221)

Except all oil, gas and other mineral deposits, together with the right to prospect for, mine and remove the same according to the Provisions of said Act of June 1, 1938.
(Assessor's Parcel Number 23714221)(Document Number 203278521)

PARCEL 26:
The West Half, Southwest Quarter, Southwest Quarter, Northeast Quarter of Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-142-32)

Excepting therefrom to the united States all oil, gas and other mineral deposits in the land so patented, together with the right to prospect for, mine and remove the same according to the provisions of the act of congress approved June 1, 1938 as reserved in patent recorded June 29, 1990 in Book 6400, page 2369 of official records.

PARCEL 27:
The West Half, West Half, Northwest Quarter, Northeast Quarter, Northeast Quarter of Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-142-33)

Excepting therefrom all oil, gas and other mineral deposits together with the right to prospect for, mine and remove the same according to the provisions of the act of congress approved June 1, 1938 (52 stat. 609) as reserved in the patent recorded march 25, 1960 in Book 3252, page 864 of official records.

PARCEL 28:
West Half, Southeast Quarter, Northwest Quarter, Northeast Quarter, Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 23715114)  (Document Number 202203620)

Also Excepting therefrom all oil, gas and other mineral deposits, together with the right to prospect for, mine and remove the same according to the Provisions of said Act of June 1, 1938.

Exhibit C to Wind Energy Development and Option Agreement



As reserved by the United States of America in patent recorded October 26, 1961 in Book 3428, Page 365 of official records.

PARCEL 29:
The East Half, Southwest Quarter, Northwest Quarter, Southwest Quarter of Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-151-15)

Excepting therefrom all oil, gas and other mineral deposits together with the right to prospect for, mine and remove the same according to the provisions of the act of congress approved June 1, 1938 as reserved by the united States of America in patent recorded may 7, 1990 in Book 6379, page 2486 of official records.

PARCEL 30:
West Half, Southeast Quarter, Southeast Quarter, Southwest Quarter, Section 10 Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 23715126)(Document Number 202093705)

PARCEL 31:
East Half, Northwest Quarter, Northeast Quarter, Southeast Quarter, Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 23715206)(Document Number 203278529)

Except all oil, gas and other mineral deposits, together with the right to prospect for, mine and remove the same according to the Provisions of said Act of June 1, 1938.   As reserved by the United States of America in patent recorded April 5, 1960 in Book 3256, Page 3265 of official records.

PARCEL 32:
The East Half of the Southeast Quarter of the Southeast Quarter of the Southeast Quarter of Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor Parcel No. 237-152-25) (Document Number 203030515)

Except all oil, gas and mineral deposits in the land so patented, together with the right to prospect for, mine and remove the same according to the provisions of said act of June 1, 1938 as excepted and reserved by the United States of America in patent recorded November 23, 1960 in book 3323 page 611 of official records.

PARCEL 33:
East Half of the Southeast Quarter of the Southwest Quarter of the Southeast Quarter of Section 10, Township 11 North, Range 13 West, according to the official plat of said land, on file in the bureau of land management. (Assessor Parcel No. 237-152-29)

Excepting therefrom all oil, gas and other mineral deposits, together with the right to prospect for, mine and remove the same according to the provisions of the act of congress, approved June 1, 1938 (52 stat. 609), as reserved to the United States in the patent recorded December 30, 1959 in book 3224, page 620 of official records.

Exhibit C to Wind Energy Development and Option Agreement

## Section 11, Township 11 North, Range 13 West

PARCEL 34:
Southwest Quarter, Northwest Quarter, Southwest Quarter, Northeast Quarter, exclusive of 50%
interest mineral rights Section 11, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's
Parcel Number 23728510)(Document Number 203049431)

PARCEL 35:
Southeast Quarter, Northwest Quarter, Southwest Quarter, Northeast Quarter, and those portions
of the Southwest Quarter, Northeast Quarter, Southwest Quarter, Northeast Quarter, Northeast
Quarter, Southwest Quarter, Southwest Quarter, Northeast Quarter, Quarter, Section 11,
Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number
23728511)(Document Number 204093710)

Excepting therefrom all oil, gas, minerals and other hydrocarbon substances within or underlying
said land as reserved by M & R Sheep Company, a Co-Partnership composed of G. Mendiburu
and Oscar Rudnick in deed recorded November 22, 1955 in Book 2519, Page 283, of Official
Records.  (Assessor's Parcel Number 23728511)(Document Number 204093710)

## Section 15, Township 11 North, Range 13 West

PARCEL 36:
The Northwest Quarter, Northwest Quarter of Section 15, Township 11 North, Range 13 West,
S.B.B. & M.  Assessor's Parcel Number 237-185-01

Excepting therefrom Half of all oil, gas and minerals and hydrocarbon substances under and in
said land as reserved by m & r sheep co., in deed dated August 4, 1955 recorded November 22,
1955 in Book 2519, page 289 of official records. Also excepting therefrom all oil, gas and other
hydrocarbon substances and minerals in and under said land not previously excepted or reserved
as reserved

AND
The Northwest Quarter of tile Southwest Quarter of Section 15, Township 11 North, Range 13
West, S.B.B. & M. Assessor's Parcel Number 237-185-01

Excepting therefrom Half of all oil, gas and minerals and hydrocarbon substances in and under
said land as reserved by m & r sheep co., in deed dated August 4, 1955 recorded November 22,
1955 in Book 2519, page 289 of official records. Also excepting therefrom all oil, gas and other
hydrocarbon substances and minerals in and under said land not previously excepted or reserved
as reserved by Benjamin Winter, a married man, in deed recorded Winter31, 1986 in Book
5954,page 2182 of official records.

AND
The Southwest Quarter, Northwest Quarter of Section 15, Township 11 North, Range 13 West,
S.B.B. & M. Assessor's Parcel Number 237-185-01

Exhibit C to Wind Energy Development and Option Agreement

Excepting therefrom Half of all oil, gas and minerals and hydrocarbon substances in and under said land as reserved by m & k sheep co., in deed dated August 4, 1955 recorded November 22, 1955 in Book 2519, page 289 of official records.

Also excepting therefrom all oil, gas and other hydrocarbon substances and minerals in and under said land not previously excepted or reserved as reserved by Benjamin Winter, a married man, in deed recorded Winter 31, 1986 in Book 5954, page 2182 of official records.

PARCEL 37:
The Northeast Quarter, Northwest Quarter of Section 15, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-185-02)

Excepting therefrom half of all oil, gas and minerals and hydrocarbon substances as reserved by M & R Sheep Company, in deed dated August 4, 1955 and recorded November 22, 1955 in Book 2519, page 289 of official records.

PARCEL 38:
The Northeast Quarter, Southeast Quarter, Northwest Quarter of Section 15, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-185-04)

Excepting therefrom half of all oil, gas and minerals and hydrocarbon substances as reserved by M & R Sheep company, in deed dated August 4, 1955 and recorded November 22, 1955 in Book 2519, page 289 of official records. (Assessor's Parcel Number 237-185-04)

---

**Section 9, Township 11 North, Range 13 West**

---

PARCEL 39:
The East Half of the East Half of Section 9, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-022-13)

Excepting therefrom one half of all oil, gas and other hydrocarbon substances and minerals in and under said land, as excepted in deed dated December 1, 1955 from M&R Sheep Company, recorded March 22, 1956, in Book 2581, Page 233 official records.

The **Investments Property** consist(s) of approximately 200 acres of land in Kern County, California as more specifically described below:

---

**Section 10, Township 11 North, Range 13 West**

---

PARCEL 1:
East Half, Southeast Quarter, Southwest Quarter, Southwest Quarter, Section 10 Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 23715129)(Document Number 203210889)

Exhibit C to Wind Energy Development and Option Agreement



Except all oil, gas and other mineral deposits in the land so patented together with the right to prospect for, mine and remove the same according to the provisions of said act of June 1, 1938.

PARCEL2:
West Half, Southeast Quarter, Southwest Quarter, Southwest Quarter, Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Document Number 061782265) (Assessor's Parcel Number 23715130)

PARCEL 3:
East Half, Southwest Quarter, Southwest Quarter, Southwest Quarter, Section 10 Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 23715131) (Document Number 2033210887)

Excepting therefrom all oil, gas and other mineral deposits, together with the right to prospect for, mine and remove the same according to the Provisions of said Act of June 1, 1938.   As reserved by the United States of America in patent recorded October 26, 1961 in Book 3428, Page 365 of official records.

PARCEL 4:
South Half, East Half, West Half, Southeast Quarter, Northwest Quarter, Southwest Quarter, Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 23715133)

Except all oil, gas and other mineral deposits, together with the right to prospect for, mine and remove the same according to the Provisions of said Act of June 1, 1938. as reserved in U.S. patent recorded October 26th, 1961 in Book 3428, page 365 of Official Records.

Subject to all covenants, conditions, restrictions, reservations, rights, rights of way, agreements, acknowledgments, comments, and easements of record, including, but not limited to, certain reservations, easements, acknowledgments and comments as set forth in the deed recorded on May 6, 2005, as documented no. 0205116435 of Kern County Official Records.

---

**Section 16, Township 11 North, Range 13 West**

---

PARCEL 5:
The East Half, Northeast Quarter of Section 16, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 234-031-08)

Excepting therefrom said land an undivided 1/16th of all coal, oil, oil shale, gas, phosphate, sodium and other mineral deposits in said land as reserved to the State of California, by the provision of an act of the legislation, statutes of 1921 page 404 and amendments thereto.

Also excepting therefrom Half of all oil, hydrocarbons and similar minerals but without the right of entry to depth of 500 feet from the surface thereon in and to the property. As granted to 1. J. Kessler, a married man, in deed recorded August 23, 1956 in Book 2654, page 300 of official records.

Exhibit C to Wind Energy Development and Option Agreement





The **BLM Property** consists of approximately 520 acres of public land held in the name of United States of America by and through the Bureau of Land Management in Section 2 and Section 10 in Township 11 North, Range 13 East, S.B.B. & M., in the County of Kern, State of California.

Exhibit C to Wind Energy Development and Option Agreement



## Exhibit B to Lease

Owner may construct buildings in Plot A as defined below.

Plot A:

A rectangular plot of land (shown in dark grey below) with a 180,000 sq ft, ~ 4 acre footprint measuring 300 ft by 600 ft and located in the southwest corner of a parcel of land (light grey) in Section 16 corresponding to APN# 234-031-08, and also described as follows: East 1/2, NE1/4 of Section 16, Township 11 North, Range 13 West, S.B.B.&M., County of Kern, State of California.



Map from Mojave, CA 15' 1973 USGS Quadrangle Map / UTM Zone 11, 1927 North American Datum

Exhibit C to Wind Energy Development and Option Agreement

*Annex 1 to Lease*

**WHEN RECORDED MAIL TO:**

Homestead Wind Farm LLC
808 Travis, Suite 700
Houston, Texas 77002
Attn: General Counsel

## MEMORANDUM OF LEASE AGREEMENT

This Memorandum of Lease Agreement ("Memorandum") dated as of this _____ day of _____, 2006 is entered into between Renewable Land, LLC ("RLC")., a California limited liability company, _____, Trustee of the Sean Garriff Roberts 2005 Trust dba Roberts Investments ("Investments"), a California trust, and Renewable Management Corp. ("RMC") a California corporation ("RLC" together with Investments and RMC, the "Lessor"), and Homestead Wind Farm LLC, a Delaware limited liability company ("Lessee").

NOW, THEREFORE, THE PARTIES HERETO AGREE AS FOLLOWS:

1.      <u>Lease and Easement</u>.  Lessor has leased to Lessee, and Lessee has leased from Lessor, real property located in the County of Kern, California (the "Property"), more particularly described on Exhibit "A" attached hereto and made a part hereof. **Additionally, Lessor has granted to Lessee certain easements as more particularly described on Exhibit "B" over, under, and across the the Property**.  The terms and conditions of the lease and easements described above are stated in that certain Ground Lease and Easement Agreement, executed by Lessor and Lessee dated _____, 200___ (the "Lease").  The Lease is incorporated herein by this reference.

2.      <u>Term</u>.  The term of the Lease and the easements granted therein commences on _____, 200____ and continues for approximately thirty (30) years thereafter, terminating on _____, 203___, unless terminated sooner in accordance with the provisions of the Lease.  Additionally, Lessee has been granted the options to renew the Lease for one (1) period of four (4) additional years each, commencing at the expiration of the initial term, in accordance with the terms and conditions more fully set forth in the Lease.

3.      <u>Permits</u>.  Lessor authorize Lessee to process and obtain any and all land use permits and/or changes including but not limited to the zone change, variance and conditional use permits in connection with the Project.   Further, Lessee shall have the right to meet with governmental agencies and with any other persons or entities with whom Lessor has contractual arrangements relating to, or which have jurisdiction over or an interest in, the Project Property or any portion thereof.

4.      <u>Other Terms and Conditions</u>.  The Lease contains other terms and conditions not herein set forth but incorporated herein for all purposes.

Exhibit C to Wind Energy Development and Option Agreement

5.   <u>Purpose of Memorandum</u>.   This Memorandum is executed for the purpose of being recorded, in order to give notice of the Lease and the provisions contained therein.  This Memorandum is not a complete summary of the terms and conditions of the Lease, and it is subject to and shall not be used to interpret or modify the Lease.   In the event of any inconsistency between the provisions of the Lease and all the provisions of this Memorandum, the provisions of the Lease shall govern.

6.   <u>Successors</u>.   This Memorandum shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors-in-interest, heirs and assigns.

7.   <u>Governing Law</u>.   This Memorandum and the Lease are governed by the laws of the State of California.

8.   <u>Counterparts</u>.   This Memorandum may be executed in one or more counterparts, each of which when executed shall constitute an original and all of which when executed together shall be considered one and the same Memorandum.

IN WITNESS WHEREOF, the parties have executed this Memorandum on the date first written above.

LESSOR:

Renewable Land, LLC.,
a California limited liability company


By _____
Title:


Renewable Management Corp.,
a California  corporation

By _____
Title:

_____ , Trustee
of the Sean Garriff Roberts 2005 Trust dba Roberts
Investments,  a California trust

By _____
Title:

Exhibit C to Wind Energy Development and Option Agreement

LESSEE:                              Homestead Wind Farm LLC,
                                     a Delaware limited liability company


                                     By _____
                                           Title:


    [Insert   acknowledgements   and   property   description   on   following   pages.]

Exhibit C to Wind Energy Development and Option Agreement

**Exhibit D**
**Purchase Agreement Terms**

Subject to <u>Section 4</u> of the Agreement, it is anticipated that the Purchase Agreement to be entered into between Owners and Homestead shall contain provisions substantially similar to the provisions contained on this <u>Exhibit D</u> and such other terms and conditions as are customary in transactions of this nature or that are reasonably requested by Homestead. For purposes of the following provisions, (1) Owners shall be identified as Sellers, (2) Homestead shall be identified as Buyer, and (3) the Owners' Property that Homestead elects to purchase pursuant to the Option shall be identified as the Purchased Property.

Section 1.   <u>Purchase Price</u>. The purchase price to be paid by Buyer at the closing for the Purchased Property shall be calculated on the date of the delivery of the Option Notice to Sellers and shall be an amount equal to the Sellers' Share <u>multiplied by</u> One Hundred Seven Thousand Dollars ($107,000), <u>multiplied by</u> the number of megawatts of generating capacity to be installed on the Project Property pursuant to the most recent site plan in effect on the date of the delivery of the Option Notice (the "<u>Purchase Price</u>"), and shall be paid through escrow at the close of escrow. As used in this Purchase Agreement "<u>Sellers' Share</u>" shall mean a fraction, the numerator of which is the number of acres comprising the Purchased Property, and the denominator of which shall be the number of acres comprising the Project Property as of the date of the delivery of the Option Notice. On the tenth anniversary of the date of the delivery of the Option notice, if the Seller's Share increased as a result of the increase of the aggregate nameplate capacity in megawatts of the all wind turbines that have been installed on the Project Property, the Buyer shall pay the Seller the revised Seller's Share as calculated in this section.

Section 2.   <u>Deposit</u>.  Promptly following the exercise of the Option, Buyer shall deposit an amount equal to ten percent (10%) of the Purchase Price (the "<u>Deposit</u>") with Escrow Holder (as that term is defined below) as its deposit for the Option. The amount of the Deposit shall be credited against the Purchase Price in the event the closing occurs.

Section 3.   <u>Conditions To Closing</u>.

Buyer's obligation to purchase the Purchased Property shall be subject to each of the following conditions precedent in favor of Buyer:

(a)   All parcels comprising the Purchased Property shall have the ability to be sold, leased and financed in compliance with the California Subdivision Map Act (California Government Code Section 66410 et seq.) and all local ordinances adopted pursuant thereto (the "<u>Map Act</u>"); and

(b)   The representations and warranties of Sellers provided in <u>Section 9</u> hereof shall in all respects be true and correct as of the Effective Date and as of the date on which the close of the escrow occurs (the "<u>Closing Date</u>"), and Sellers shall have performed all of its obligations hereunder.

(c)    The condition precedent set forth in <u>Section 3(a)</u> hereof may not be waived by either Party.  The condition precedent set forth in <u>Section 3(a)</u> hereof may be waived solely by Buyer, which waiver must be in writing to be effective.  Buyer may terminate this Agreement, and receive a full refund of the Option Payment, should any condition set forth in <u>Section 3(a)</u> or <u>(b)</u> hereof fail to be satisfied after Seller has had a reasonable opportunity to cure any such failure (but in no event later than 90 days from the date of such failure), and Buyer's delay in exercising such right of termination shall not result in a waiver of such right.

(d)    The Parties shall work together in good faith and each Party shall use its commercially reasonable efforts and diligence to cause the conditions precedent set forth in <u>Section 3(a)</u> hereof to be satisfied and to close the transaction contemplated hereby in a timely manner; provided, however, that the costs of satisfying the condition precedent set forth in <u>Section 3(a)</u> hereof shall be borne by Buyer.

Section 4.    <u>Escrow and Title</u>.

(a)    Within five (5) business days after delivery of the Option Notice, the Parties shall open escrow at the offices of such escrow company as Buyer may designate and which is located in Kern County (the "<u>Escrow Holder</u>"), by delivering thereto an executed original of this Agreement.  Thereafter, the Parties shall promptly execute and deliver to Escrow Holder its standard escrow instructions and such further instructions as may reasonably be requested by Escrow Holder, so long as the same are not inconsistent with the terms and provisions of this Agreement.  The closing of the Option shall occur through the escrow thereby created.  At least three (3) business days prior to the Closing Date, Sellers shall deliver to Escrow Holder the documents and instruments described in <u>Section 5</u> hereof.

(b)    Sellers shall deliver to the Escrow Holder and the Title Company such documents, instruments and other items as may reasonably be requested or required by the Escrow Holder, the Title Company or Buyer in order to close the escrow in a timely manner and provide Buyer with the Title Policy contemplated by <u>Section 6(c)</u> of the Agreement.

Section 5.    <u>Closing</u>.  The closing of the Option shall occur within five (5) business days after Buyer delivers notice to Sellers that it is prepared to close the escrow (the "<u>Closing Notice</u>"); provided, however, that if Buyer fails to give the Closing Notice by the later to occur of the following: (a) twelve (12) calendar months after the date on which Buyer delivers the Option Notice to Sellers or (b) three (3) calendar months after the date on which the Purchased Property becomes at least one (1) parcel which may be sold, leased and financed in compliance with the Map Act, then Sellers may terminate the escrow.  At the closing:

(a)    Sellers shall convey the Purchased Property to Buyer by the Title Company's customary form of grant deed, without any reservations, exceptions or qualifications; and

(b)    Sellers shall deliver to Buyer affidavits in a form satisfactory to Buyer, duly executed under penalty of perjury by Sellers, to the effect that Buyer is not required to withhold from Seller's closing proceeds pursuant to Internal Revenue Code section 1445 or California Revenue and Taxation Code section 18662.

Section 6.     Costs and Prorations.

Buyer shall pay (1) the premium for the Title Policy, (2) Escrow Holder's escrow fees, (3) recording fees, (4) County documentary transfer taxes, in the amount that Escrow Holder determines to be required by law, (5) all costs of causing the Purchased Property to consist of at least one parcel which may be sold, leased and financed in compliance with the Map Act, (6) the cost of preparing an ALTA survey, if Buyer should elect to obtain such a survey, (7) fees for beneficiaries' statements and (8) usual Escrow Holder document drafting and recording charges. Any other costs and expenses associated with the transaction contemplated hereby shall be borne by the Parties in the manner customary in real property sales transactions in Kern County.
The following shall be prorated by the Escrow Holder to the Closing Date: (A) property taxes and (B) assessments.

Section 7.     Possession.     Possession of the Purchased Property shall be delivered to Buyer on the Closing Date. Upon such delivery of possession, the Purchased Property and each portion thereof shall be (i) free and clear of all rights of tenants and other occupants thereof and (ii) except for the Met Towers and Met Tower Facilities (as defined in Section 8), free of improvements, equipment, machinery and other property then or previously owned by Sellers or by any such tenant or occupant. It shall be each Seller's obligation to cause any and all tenants and other occupants of the Purchased Property or any portion thereof to vacate the Purchased Property prior to such delivery of possession.

Section 8.     LIQUIDATED DAMAGES. THE PARTIES AGREE THAT IT WOULD BE DIFFICULT OR IMPOSSIBLE FOR THEM TO DETERMINE, PRIOR TO SIGNING THIS AGREEMENT, THE AMOUNT OF DAMAGES THAT SELLERS WILL SUFFER IF BUYER FAILS TO PERFORM ITS OBLIGATIONS UNDER THIS AGREEMENT AFTER EXERCISE OF THE OPTION. THEREFORE, IF AFTER EXERCISE OF THE OPTION AND SATISFACTION OR WAIVER OF ALL CONDITIONS PROVIDED HEREIN BUYER FAILS TO PERFORM ITS OBLIGATIONS UNDER THIS AGREEMENT, AND SUCH FAILURE CONSTITUTES A DEFAULT HEREUNDER, THE PARTIES AGREE THAT (A) AS SELLERS' SOLE AND EXCLUSIVE REMEDY (MEANING, WITHOUT LIMITATION, THAT SELLERS WILL HAVE NO RIGHT TO SPECIFIC PERFORMANCE OR ANY OTHER EQUITABLE REMEDY), SELLERS WILL BE ENTITLED TO RETAIN THE SUM OF THE OPTION PAYMENT PLUS THE DEPOSIT AS LIQUIDATED DAMAGES AND (B) SAID AMOUNT IS A REASONABLE AMOUNT FOR LIQUIDATED DAMAGES UNDER THE CIRCUMSTANCES EXISTING AT THE TIME THIS AGREEMENT IS ENTERED INTO.

_____          _____

Buyer's initials                 Sellers' initials

Section 9.     Representations and Warranties.     In addition to any other express agreements, representations or warranties of Sellers contained in this Agreement, the following constitute representations and warranties by Sellers which shall be true and correct as of the Effective Date and the Closing Date; and each Seller acknowledges and agrees that Buyer will be



relying on such representations and warranties in entering into this Agreement. In the event that, during the period between the Effective Date and the Closing Date, either Seller learns, or has reason to believe, that any of the following representations and warranties may cease to be true, such Seller hereby covenants to give written notice thereof to Buyer immediately:

(a)     Sellers are the sole owner of the Purchased Property, hold fee title absolute thereto and have the full right, power and authority, without the signature or joinder of any other person or entity, to (1) grant the Option to Buyer, (2) sell, convey and transfer the Purchased Property to Buyer and (c) perform their respective obligations hereunder.

(b)     There are no pending or threatened actions, suits, claims, legal proceedings or any other proceedings affecting or that could affect the Purchased Property or any portion thereof, at law or in equity, before any court or governmental agency, domestic or foreign.

(c)     To the best of each Seller's knowledge, there are no violations of any Law affecting or applicable to the Purchased Property or any portion thereof, and such Seller has no knowledge of any facts which might be a basis for any such violation.

(d)     To the best of each Seller's knowledge and except as set forth on Schedule 1 hereto, no underground tanks are now located or at any time in the past have been located on the Purchased Property or any portion thereof, no toxic or hazardous substances have been generated, treated, stored, disposed of or otherwise deposited in or on or allowed to emanate from the Purchased Property or any portion thereof, and there are no other substances or conditions in, on or emanating from the Purchased Property or any portion thereof which may support a claim or cause of action under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, the Carpenter-Presley-Tanner Hazardous Substance Account Act, the California Hazardous Waste Control Law, the Porter-Cologne Water Quality Control Act or any other environmental Law.

(e)     There are no commitments or agreements with any governmental agency or public or private utility affecting the Purchased Property or any portion thereof that have not been disclosed in writing by Sellers to Buyer.

(f)     There are no leases, subleases, occupancies or tenancies in effect relating to the Purchased Property or any portion thereof, nor will either Seller or Buyer have any ongoing obligation to any previous tenant or occupant of the Purchased Property or any portion thereof, including, without limitation, for the return of prepaid rents or security deposits.

(g)     To the best of each Seller's knowledge, the items delivered by Sellers to Buyer under Section 5(a) of the Agreement hereof (1) constitute all of the documents and other items in Sellers' possession or under its control relating to the Purchased Property and (2) are true, correct and complete in all respects.

(h)     To the best of each Seller's knowledge, there are no other Encumbrances (as defined in Section 5(b) of the Agreement) affecting the Purchased Property or any portion thereof, except as disclosed to Buyer in writing by the Title Company.

(i) To the best of each Seller's knowledge, there are no other material adverse facts or conditions relating to the Purchased Property or any portion thereof that have not been disclosed in writing by Sellers to Buyer.

(j) Sellers have not engaged or dealt with any broker or finder in connection with the transaction contemplated by this Agreement.

(k) (i) Each Seller has full, legal and unilateral authority to enter into this Agreement, to grant the rights herein granted and to perform its obligations hereunder, (ii) each Seller is not a party to any existing agreement that limits its authority to execute this Agreement, to grant the rights herein granted or to perform its obligations hereunder, (iii) neither this Agreement nor any of the rights or obligations of Sellers hereunder violates any Law, (iv) this Agreement constitutes the valid and binding obligation of Sellers, and is enforceable in accordance with its terms, (v) neither Seller is in default with respect to any of their obligations or liabilities pertaining to the Purchased Property or any portion thereof and (vi) neither Seller is the subject of any bankruptcy, insolvency or probate proceeding.

Section 10. <u>Maintenance of the Purchased Property Prior To the Closing Date</u>.

(a) From the Effective Date until the Closing Date, Sellers shall remain in possession of the Purchased Property, pay normal operating expenses and keep the Purchased Property in substantially the same condition as it was in on the Effective Date, normal wear and tear excepted. Without limiting the generality of the foregoing, until the Closing Date Sellers shall (1) keep the Purchased Property clean and free of debris, (2) pay all real property taxes, water district taxes and assessments levied against the Purchased Property or any of the improvements thereon, or against Sellers or Sellers' crops or other property, or by virtue of Sellers' use or enjoyment of the Purchased Property, (3) pay all principal, interest and other amounts due under any loan or other obligation secured by a lien against the Purchased Property, (4) not make any alterations or changes to the Purchased Property, without the prior written consent of Buyer, which shall not unreasonably be withheld, (5) not commit or permit anyone else to commit waste or damage to the Purchased Property and (6) not use the Purchased Property in any manner that would tend to create a nuisance. The risk of physical loss to the Purchased Property shall be borne by Sellers prior to the close of escrow and by Buyer thereafter. In the event that the Purchased Property is damaged between the Effective Date and the Closing Date, and Buyer determines that such damage could impair its intended use of the Purchased Property, then Buyer shall be entitled (but not required) to terminate this Agreement and receive a refund of the Option Payment.

(b) Without limiting the generality of <u>Section 10(a)</u> hereof, and without limitation upon any other rights or remedies that Buyer may have at law or in equity, Buyer may pay or otherwise satisfy any unpaid taxes, rents or other obligations of Sellers which, if left unsatisfied, could reasonably be expected to reduce the value of the Purchased Property, create a lien against the Purchased Property or jeopardize Buyer's right, title and interest under this Agreement; and Buyer shall thereupon be subrogated to the rights of the obligee of such obligations. Any sums so expended by Buyer shall, at Buyer's election, either be (A) immediately reimbursed to Buyer by Sellers or (B) offset against any sums then or thereafter due and payable to Sellers under this Agreement, including, without limitation, the Purchase Price.

**Exhibit E**

WHEN RECORDED MAIL TO:
Homestead Wind Farm LLC
808 Travis, Suite 700
Houston, Texas 77002
Attn: General Counsel.

## MEMORANDUM OF AGREEMENT

THIS MEMORANDUM OF AGREEMENT (this "Memorandum") is made and entered into as of November 17, 2006 (the "Effective Date") by and between Renewable Land, LLC ("RLC"), a California limited liability corporation having an office at 16922 Airport Blvd., Suite 27, Mojave, CA 93501, Trustee of the Sean Garriff Roberts 2005 Trust dba Roberts Investments ("Investments"), a California trust having an office at 16922 Airport Blvd., Suite 27, Mojave, CA 93501, and Renewable Management Corp., ("RMC") a California corporation having an office at 16922 Airport Blvd., Suite 27, Mojave, CA 93501,   (RLC together with Investments and RMC, the "Owner") and Homestead Wind Farm LLC, a Delaware limited liability company, having an office at 808 Travis, Suite 700, Houston, Texas    77002 ("Homestead").

### RECITALS

A.      Owner is the owner of certain real property in Kern County, California, more particularly described on Exhibit A attached hereto and made a part hereof (the "Owner's Property").

B.      Homestead desires to acquire the right (but not the obligation) to lease or purchase the Property, and Owner desire to grant such option to Homestead. To that end, Homestead and Owner have entered in an unrecorded Agreement contemporaneously herewith (the "Agreement") effective as the Effective Date.

C.      Homestead and Owner desire to execute this Memorandum to provide constructive notice of Homestead's rights under the Agreement to all third parties. Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Agreement.

NOW, THEREFORE, for good and valuable consideration paid to Owner, the receipt and sufficiency of which are hereby acknowledged, Owner and Homestead hereby agree as follows:

1.      Grant. Owner hereby irrevocably and unconditionally grants, bargains, sells and conveys to Homestead the exclusive right and option (the "Option") to lease or purchase the Owner's Property in accordance with the terms and conditions of the Agreement.

2.      Option Term. The term of the Option and the Agreement shall commence on the Effective Date and shall continue for five years expiring on the fifth anniversary of the Effective Date, unless extended or earlier terminated in accordance with the terms of the Agreement.

3.      Other Provisions. The Agreement also contains various other covenants, obligations and rights of Homestead and Owner, including, without limitation (i) the terms and conditions of the Lease, (ii) the terms and conditions of the purchase, (iii) the encumbrance, assignment or subletting of the rights of Homestead under the Agreement and the Owner's Property and (iv) provisions relating to consideration for the Option.

4.      Permits.      Owners authorize Homestead to process and obtain any and all land use permits and/or changes including but not limited to the zone change, variance and conditional use permits in connection with the Project.   Further, Homestead shall have the right to meet with governmental agencies and with any other persons or entities with whom Owners has contractual arrangements relating to, or which have jurisdiction over or an interest in, the Project Property or any portion thereof.

5.      Purpose of this Memorandum. The conditions, terms and covenants of the Agreement are incorporated herein by reference as though fully set forth herein.   This Memorandum does not supersede, modify, amend or otherwise change, and shall not be used in interpreting, the terms, conditions or covenants of the Agreement.  In the event of any conflict between this Memorandum and the Agreement, the Agreement shall control.

6.      Counterparts.  This Memorandum may be executed with counterpart signature pages and in duplicate originals, each of which shall be deemed an original, and all of which together shall constitute a single instrument.

7.      Successors and Assigns.   The Owner's Property shall be held, conveyed, assigned, hypothecated, encumbered, leased, used and occupied subject to this Memorandum and the Agreement and the covenants, terms and provisions set forth herein and therein, which covenants, terms and provisions shall run with the Owner's Property and each portion thereof and interest therein, and shall be binding upon and inure to the benefit of Owner and Homestead and any other person and entity having any interest therein during their ownership thereof, and their respective grantees, heirs, executors, administrators, successors and assigns, and all persons claiming under them.

## SIGNATURES TO FOLLOW ON NEXT PAGE

IN WITNESS WHEREOF, the Parties have executed this Memorandum as of the Effective Date.

OWNERS:

_____

Renewable Land, LLC.,
a California limited liability company

By _____ President
   Title: President

Renewable Management Corp.,
a California corporation

By _____ president
   Title: President

Sean Garriff Roberts, Trustee of the Sean Garriff
Roberts 2005 Trust dba Roberts Investments, a
California trust

By _____
   Title: Trustee

HOMESTEAD:                    Homestead Wind Farm LLC,                11-13-06
                             a Delaware limited liability company

                             By _____
                             Title:
                                   Michael P. Skeily
                                   Vice President - Development

## ACKNOWLEDGEMENTS

State of _Oklahoma_ )
County of _Custer_ )

On _November 15_, 20 _06_, before me, the undersigned Notary Public, personally appeared _Sean Garriff Roberts_, personally known to me or proved to me on the basis of satisfactory evidence to the person (s) whose name(s) is/are subscribed to the within instrument; and acknowledged to me that he/she/they executed the same in his/her/their/authorized capacity (ies) , and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public

State of _Texas_ )
County of _Harris_ )

On _November 14_, 20 _06_, before me, the undersigned Notary Public, personally appeared _Michael Skelly_, personally known to me or proved to me on the basis of satisfactory evidence to the person (s) whose name(s) is/are subscribed to the within instrument; and acknowledged to me that he/she/they executed the same in his/her/their/authorized capacity (ies) , and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

LISA K. BROOMAS
Notary Public, State of Texas
My Commission Expires
July 01, 2007

_Lisa K. Broomas_
Notary Public

Exhibit E to Wind Energy Development and Option Agreement

**Exhibit A to Memorandum of Agreement**

**Real Property Description.**

The **RLC Property** consist(s) of approximately 670 acres of land in Kern County, California as more specifically described below:

| Section 35, Township 12 North, Range 13 West |
|---|

PARCEL 1:
West Half, West Half, Southeast Quarter, Section 35, Township 12 North, Range 13 West, S.B.B. & M. ((Assessor's Parcel Number 22445025)

Excepting therefrom the North 249 feet thereof.

PARCEL 2:
South Half, West Half, East Half, Southwest Quarter, of fraction Section 35, Township 12 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 22445029)

Also excepting therefrom twenty-five percent (25%) of all oil, carbohydrates, minerals (metallic and non-metallic, boron, rate earth, rock, sand and gravel. Grantor herein shall not have the interest in proportion to above interest in the event oil, minerals, etc. are development as reserved by Earl W. Dible and Isable W. Dible, as community property in deed recorded January 13, 1969, in Book 4231 Page 301 of Official Records,

PARCEL 3:
South Half, North Half, Northwest Quarter, Southeast Quarter, Southeast Quarter, Section 35, Township 12 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 22445033)

Subject to all covenants, conditions, restrictions, reservations, rights, rights of way, and easements of record.

| Section 36, Township 12 North, Range 13 West |
|---|

PARCEL 4:
West Half, of Lots 1 and 2 in the Northwest Quarter, of Section 36, Township 12 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 22444001)

The plant of a dependent resurvey of said township was filed in the District Land Office, February 28, 1940. (Assessor's Parcel Number 22444001)



PARCEL 5:
Lot 2 in the Northeast Quarter, of Section 36, Township 12 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 22444003)

Excepting therefrom one-half of all oil, gas, minerals and other hydrocarbon substances in and under the land above described, as reserved by High F. Newman and December 10, 1975, in Book 4927, Page 2373 Official Records.  The plat of a dependent resurvey of said Township was filed in the District Land Office February 28th, 1940. (Assessor's Parcel Number 22444003)

PARCEL 6:
Lot 1 in the Northeast Quarter, of Section 36, Township 12 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 22444005)

Excepting therefrom the East Half, East Half, of said Lot 1 as conveyed to Frederick Carlson and Sulma Lee Carlson, husband and wife as joint tenants, in deed recorded March 3, 1970 in Book 4373 Page 987 of Official Records.

Also excepting therefrom the West Half, West Half, of said Lot 1, as conveyed to Nicholas C. Theodore and Pauline R. Theodore, husband and wife as joint tenants, in deed recorded June 27th, 1972 in Book 4892 page 551 of Official Records.

Also excepting therefrom one-half of all oil, gas, minerals and other hydrocarbon substances in and under said land as reserved by Hugh F. Newman and Marion L. Newman, husband and wife.

PARCEL 7:
The North Half, North Half, Northwest Quarter, Southwest Quarter, Section 36, Township 12 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 22444008)

| Section 02, Township 11 North, Range 13 West |
|---|

PARCEL 8:
Lot 17, Section 2, Township 11. North, Range 13 West, S.B.B.M. Assessor's Parcel Number (237 121 02)

Except such oil, gas and all other mineral deposits together with the rights to prospect for, mine, and remove the same, as were required to be reserved to the United States by the act of June 1, 1938 (52 stat. 609) as amended and as reserved in the patent from the United States to Claire Gleason recorded February 27, 1962 in book 3467 page 73 of official records.

PARCEL 9:
Lot 22 of Section 2, Township 11 North, Range 13 West, S.B.B. & M.

East Half, Southeast Quarter, Northwest Quarter, Northwest Quarter of Section 2, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-121-29)



Excepting therefrom all oil, gas and other mineral deposits in the land so patented, together with the right to prospect for, mine and remove the same according to the provisions of said act of June 1, 1938 as excepted and reserved in patent by the united States of America recorded January 30, 1961 in Book 3343, page 995 of official records.

PARCEL 10:
Lot 36 of Section 2, Township 11 North, Range 13 West, S.B.B.M.  Excepting therefrom all oil, gas and other mineral deposits in the land so patented, together with the right to prospect for, mine and remove the same.

According to the provisions of said act of June 1, 1938, as reserved by the United States of America, in patent recorded April 19, 1965 in Book 3832 page 729 of official records. Assessor's Parcel Number (237 122 14)

PARCEL 11:
Lot 51 in the North Half of Section 2, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-122-31)

Excepting therefrom to the United States all oil, gas and other mineral deposits in the land so patented, together with the right to prospect for, mine and remove the same according to the provisions of said act of June 1, 1938 as reserved by the United States of America in patent recorded January 30, 1961 in book 3343 page 995 of official records.

PARCEL 12:
The East Half, Northwest Quarter, Northwest Quarter, Southwest Quarter, of Section 2 Township 11 North, Range 13 West, S.B.B.M. Assessor's Parcel Number ( 237 131 02)

Excepting therefrom all oil, gas and other mineral Deposits in the Land so patented, together with the right to prospect for, mine and remove the same according to the provisions of said act of June 1, 1938, as reserved by the United States of Amcrica, in patent recorded February 8, 1960 in Book 3237, page 62 of official records.

PARCEL 13:
West Half, Southeast Quarter, Southeast Quarter, Southeast Quarter, Section 2 Township 11 North, Range 13 West, S.B.B.M. Assessor's Parcel Number (237 132 29)

Except the North 264 feet.

Also except all oil, gas and other mineral deposits in the lands so entered and patentcd, together with the right to prospect for, mine and remove the same pursuant to the provisions an limitations of the act of June 1, 1938  as reserved in the patent executed by the United States of America recorded January 16, 1961, in Book 3339 Page 85, of Official Records.

PARCEL 14:
East Half, Southwest Quarter, Southwest Quarter, Southeast Quarter, Section 2 Township 11 North, Range 13 West, S.B.B.M. Assessor's Parcel Number (237 132 34)



Except all oil, gas and other mineral deposits in said land, together with the right to prospect for, mine and remove the same according to the provisions of the act of June 1, 1938, as excepted by patent from the United States of America recorded December 8' 1969 in book 4344, page 887 of official records.

PARCEL 15:
The North 330 of the East 330 feet of the East Half, Southeast Quarter, Northeast Quarter, Southeast Quarter, Section 2 Township 11 North, Range 13 West, S.B.B.M.  Assessor's Parcel Number (237 132 37)

Excepting therefrom that portion of said land conveyed by Dorothy Morrow in deed recorded January 12 1965 in Book 3803 page 530 of Official Records.

Also except all the coal and other mineral deposits in the lands so entered and patented, together with the right to prospect for, mine and remove the same pursuant to the provisions an limitations of the act of June 1, 1938 (52 Stat. 609), as excepted and reserved in the patent executed by the United States of America recorded January 16, 1961, in Book 3339 Page 85, of Official Records.



| Section 10, Township 11 North, Range 13 West |
| --- |



PARCEL 16:
The East Half, Northwest Quarter, Northwest Quarter, Northwest Quarter, Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-141-02)

Excepting therefrom all oil, gas and other mineral deposits in the land so patented, together with the right to prospect for, mine and remove the same pursuant to the provisions of some act of June 1, 1938 as reserved by deed recorded September 20, 1967 in Book 4090, page 851 of official records.

PARCEL 17:
The East Half, Southwest Quarter, Northwest Quarter, Northwest Quarter, Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-141-15)

Excepting therefrom all oil: gas and other mineral deposits in the land so patented, together with the right to prospect for, mine and remove the same according to the provisions of the act of June 1, 1938 (58 stat. 609) as reserved in by the USA. In patent recorded November 28, 1972 in Book 4750, page 484 of official records.

PARCEL 18:
East Half, Southeast Quarter, Southeast Quarter, Northwest Quarter, Section  10 Township 11 North, Range 13 West, S.B.B. & M.  (Assessor's Parcel Number 23714125)



Except all oil, gas and other mineral deposits, together with the right to prospect for, mine and remove the same according to the Provisions of said Act of June 1, 1938. (Assessor's Parcel Number 23714125) (Document Number 203062616)

PARCEL 19:
The West Half of the Northeast Quarter of the Northwest Quarter of the Northeast Quarter of Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-142-03)

Excepting therefrom all oil, gas and other mineral deposits in said land together with the right to prospect for, mine and remove the same according to the provisions of the act of June 1, 1938 and as reserved by the United States in the patent recorded November 17, 1972 in book 4747, page 619 of official records.

PARCEL 20:
The East Half of the Northeast Quarter of the Northwest Quarter of the Northeast Quarter of Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-142-04)

Expecting therefrom all oil, gas and other minerals as reserved in the patent recorded July 13, 1960 in book 3283, page 553 of the official records.

PARCEL 21:
The East Half, Northwest Quarter, Northeast Quarter, Northeast Quarter of Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-142-06)

PARCEL 22:
The East Half, Southwest Quarter, Northeast Quarter, Northeast Quarter of Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor Parcel No. 237-142-11)

Except all oil, gas and other mineral deposits together with the right to prospect for, mine and remove the same as reserved by the United States of America in patent recorded march 22, 1960 in book 3251 page 444 of official records.

PARCEL 23:
The East Half of the Southeast Quarter of the Northwest Quarter of the Northeast Quarter of Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-142-13)

Excepting therefrom all oil, gas and other mineral deposits together with the right to prospect for, mine and remove the same as were required to be reserved to the United States by the act of June 1, 1938 (52 stat. 609) as amended and reserved in the patent from the United States to bernard miles clayton, recorded august 29, 1961 in book 3410, page 76 of official records.



Exhibit E to Wind Energy Development and Option Agreement



PARCEL 24:
West Half, Southeast Quarter, Northwest Quarter, Northeast Quarter, Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 23714214) (Document Number 202203620)

Excepting therefrom the South Half, East Half, West Half, Southeast Quarter, Northwest Quarter, Southwest Quarter of Section 10

Also Excepting therefrom all oil, gas and other mineral deposits, together with the right to prospect for, mine and remove the same according to the Provisions of said Act of June 1, 1938. As reserved by the United States of America in patent recorded October 26, 1961 in Book 3428, Page 365 of official records.

PARCEL 25:
West Half, Northwest Quarter, Southeast Quarter, Northeast Quarter, Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 23714221)

Except all oil, gas and other mineral deposits, together with the right to prospect for, mine and remove the same according to the Provisions of said Act of June 1, 1938.
(Assessor's Parcel Number 23714221)(Document Number 203278521)

PARCEL 26:
The West Half, Southwest Quarter, Southwest Quarter, Northeast Quarter of Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-142-32)

Excepting therefrom to the united States all oil, gas and other mineral deposits in the land so patented, together with the right to prospect for, mine and remove the same according to the provisions of the act of congress approved June 1, 1938 as reserved in patent recorded June 29, 1990 in Book 6400, page 2369 of official records.

PARCEL 27:
The West Half, West Half, Northwest Quarter, Northeast Quarter, Northeast Quarter of Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-142-33)

Excepting therefrom all oil, gas and other mineral deposits together with the right to prospect for, mine and remove the same according to the provisions of the act of congress approved June 1, 1938 (52 stat. 609) as reserved in the patent recorded march 25, 1960 in Book 3252, page 864 of official records.

PARCEL 28:
West Half, Southeast Quarter, Northwest Quarter, Northeast Quarter, Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 23715114) (Document Number 202203620)

Also Excepting therefrom all oil, gas and other mineral deposits, together with the right to prospect for, mine and remove the same according to the Provisions of said Act of June 1, 1938.



As reserved by the United States of America in patent recorded October 26, 1961 in Book 3428, Page 365 of official records.

PARCEL 29:
The East Half, Southwest Quarter, Northwest Quarter, Southwest Quarter of Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-151-15)

Excepting therefrom all oil, gas and other mineral deposits together with the right to prospect for, mine and remove the same according to the provisions of the act of congress approved June 1, 1938 as reserved by the united States of America in patent recorded may 7, 1990 in Book 6379, page 2486 of official records.

PARCEL 30:
West Half, Southeast Quarter, Southeast Quarter, Southwest Quarter, Section 10 Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 23715126)(Document Number 202093705)

PARCEL31:
East Half, Northwest Quarter, Northeast Quarter, Southeast Quarter, Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 23715206)(Document Number 203278529)

Except all oil, gas and other mineral deposits, together with the right to prospect for, mine and remove the same according to the Provisions of said Act of June 1, 1938. As reserved by the United States of America in patent recorded April 5, 1960 in Book 3256, Page 3265 of official records.

PARCEL32:
The East Half of the Southeast Quarter of the Southeast Quarter of the Southeast Quarter of Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor Parcel No. 237-152-25) (Document Number 203030515)

Except all oil, gas and mineral deposits in the land so patented, together with the right to prospect for, mine and remove the same according to the provisions of said act of June 1, 1938 as excepted and reserved by the United States of America in patent recorded November 23, 1960 in book 3323 page 611 of official records.

PARCEL 33:
East Half of the Southeast Quarter of the Southwest Quarter of the Southeast Quarter of Section 10, Township 11 North, Range 13 West, according to the official plat of said land, on file in the bureau of land management. (Assessor Parcel No. 237-152-29)

Excepting therefrom all oil, gas and other mineral deposits, together with the right to prospect for, mine and remove the same according to the provisions of the act of congress, approved June 1, 1938 (52 stat. 609), as reserved to the United States in the patent recorded December 30, 1959 in book 3224, page 620 of official records.



### Section 11, Township 11 North, Range 13 West

PARCEL 34:
Southwest Quarter, Northwest Quarter, Southwest Quarter, Northeast Quarter, exclusive of 50%
interest mineral rights Section 11, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's
Parcel Number 23728510)(Document Number 203049431)

PARCEL 35:
Southeast Quarter, Northwest Quarter, Southwest Quarter, Northeast Quarter, and those portions
of the Southwest Quarter, Northeast Quarter, Southwest Quarter, Northeast Quarter, Northeast
Quarter, Southwest Quarter, Southwest Quarter, Northeast Quarter, Quarter, Section 11,
Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number
23728511)(Document Number 204093710)

Excepting therefrom all oil, gas, minerals and other hydrocarbon substances within or underlying
said land as reserved by M & R Sheep Company, a Co-Partnership composed of G. Mendiburu
and Oscar Rudnick in deed recorded November 22, 1955 in Book 2519, Page 283, of Official
Records.  (Assessor's Parcel Number 23728511)(Document Number 204093710)

### Section 15, Township 11 North, Range 13 West

PARCEL 36:
The Northwest Quarter, Northwest Quarter of Section 15, Township 11 North, Range 13 West,
S.B.B. & M.  Assessor's Parcel Number 237-185-01

Excepting therefrom Half of all oil, gas and minerals and hydrocarbon substances under and in
said land as reserved by m & r sheep co., in deed dated August 4, 1955 recorded November 22,
1955 in Book 2519, page 289 of official records. Also excepting therefrom all oil, gas and other
hydrocarbon substances and minerals in and under said land not previously excepted or reserved
as reserved

AND
The Northwest Quarter of tile Southwest Quarter of Section 15, Township 11 North, Range 13
West, S.B.B. & M. Assessor's Parcel Number 237-185-01

Excepting therefrom Half of all oil, gas and minerals and hydrocarbon substances in and under
said land as reserved by m & r sheep co., in deed dated August 4, 1955 recorded November 22,
1955 in Book 2519, page 289 of official records. Also excepting therefrom all oil, gas and other
hydrocarbon substances and minerals in and under said land not previously excepted or reserved
as reserved by Benjamin Winter, a married man, in deed recorded Winter31, 1986 in Book
5954,page 2182 of official records.

AND

The Southwest Quarter, Northwest Quarter of Section 15, Township 11 North, Range 13 West, S.B.B. & M. Assessor's Parcel Number 237-185-01

Excepting therefrom Half of all oil, gas and minerals and hydrocarbon substances in and under said land as reserved by m & k sheep co., in deed dated August 4, 1955 recorded November 22, 1955 in Book 2519, page 289 of official records.

Also excepting therefrom all oil, gas and other hydrocarbon substances and minerals in and under said land not previously excepted or reserved as reserved by Benjamin Winter, a married man, in deed recorded Winter 31, 1986 in Book 5954, page 2182 of official records.

PARCEL 37:
The Northeast Quarter, Northwest Quarter of Section 15, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-185-02)

Excepting therefrom half of all oil, gas and minerals and hydrocarbon substances as reserved by M & R Sheep Company, in deed dated August 4, 1955 and recorded November 22, 1955 in Book 2519, page 289 of official records.

PARCEL 38:
The Northeast Quarter, Southeast Quarter, Northwest Quarter of Section 15, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-185-04)

Excepting therefrom half of all oil, gas and minerals and hydrocarbon substances as reserved by M & R Sheep company, in deed dated August 4, 1955 and recorded November 22, 1955 in Book 2519, page 289 of official records. (Assessor's Parcel Number 237-185-04)

**Section 9, Township 11 North, Range 13 West**

PARCEL 39:
The East Half of the East Half of Section 9, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 237-022-13)

Excepting therefrom one half of all oil, gas and other hydrocarbon substances and minerals in and under said land, as excepted in deed dated December 1, 1955 from M&R Sheep Company, recorded March 22, 1956, in Book 2581, Page 233 official records.

The **Investments Property** consist(s) of approximately 200 acres of land in Kern County, California as more specifically described below:



## Section 10, Township 11 North, Range 13 West

PARCEL 1:
East Half, Southeast Quarter, Southwest Quarter, Southwest Quarter, Section 10 Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 23715129)(Document Number 203210889)

Except all oil, gas and other mineral deposits in the land so patented together with the right to prospect for, mine and remove the same according to the provisions of said act of June 1, 1938.

PARCEL2:
West Half, Southeast Quarter, Southwest Quarter, Southwest Quarter, Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Document Number 061782265) (Assessor's Parcel Number 23715130)

PARCEL 3:
East Half, Southwest Quarter, Southwest Quarter, Southwest Quarter, Section 10 Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 23715131) (Document Number 2033210887)

Excepting therefrom all oil, gas and other mineral deposits, together with the right to prospect for, mine and remove the same according to the Provisions of said Act of June 1, 1938.   As reserved by the United States of America in patent recorded October 26, 1961 in Book 3428, Page 365 of official records.

PARCEL 4:
South Half, East Half, West Half, Southeast Quarter, Northwest Quarter, Southwest Quarter, Section 10, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 23715133)

Except all oil, gas and other mineral deposits, together with the right to prospect for, mine and remove the same according to the Provisions of said Act of June 1, 1938. as reserved in U.S. patent recorded October 26th, 1961 in Book 3428, page 365 of Official Records.

Subject to all covenants, conditions, restrictions, reservations, rights, rights of way, agreements, acknowledgments, comments, and easements of record, including, but not limited to, certain reservations, easements, acknowledgments and comments as set forth in the deed recorded on May 6, 2005, as documented no. 0205116435 of Kern County Official Records.

## Section 16, Township 11 North, Range 13 West

PARCEL 5:
The East Half, Northeast Quarter of Section 16, Township 11 North, Range 13 West, S.B.B. & M. (Assessor's Parcel Number 234-031-08)

Exhibit E to Wind Energy Development and Option Agreement

Excepting therefrom said land an undivided 1/16th of all coal, oil, oil shale, gas, phosphate, sodium and other mineral deposits in said land as reserved to the State of California, by the provision of an act of the legislation, statutes of 1921 page 404 and amendments thereto.

Also excepting therefrom Half of all oil, hydrocarbons and similar minerals but without the right of entry to depth of 500 feet from the surface thereon in and to the property. As granted to 1. J. Kessler, a married man, in deed recorded August 23, 1956 in Book 2654, page 300 of official records.

The **BLM Property** consists of approximately 520 acres of public land held in the name of United States of America by and through the Bureau of Land Management in Section 2 and Section 10 in Township 11 North, Range 13 East, S.B.B. & M., in the County of Kern, State of California.

**Exhibit F**
County Agreement

ATTACHED HERETO

# AGREEMENT

THIS AGREEMENT, made and entered into this _____ day of _____, 200__, by and between COUNTY OF KERN, a political subdivision of the State of California (hereinafter referred to as "COUNTY"), and _____ _____, (hereinafter referred to as "OWNER"):

# WITNESSETH:

WHEREAS, in consideration of the COUNTY's approval of _____

_____

_____

and the related CEQA approvals granted by COUNTY thereunder, ("the Project"), the OWNER desires to indemnify the COUNTY from liability or loss connected with the Project approvals herein;

NOW, THEREFORE, IT IS MUTUALLY AGREED between COUNTY and OWNER as follows:

1. The OWNER shall defend, indemnify. and hold harmless the COUNTY and its agents, officers, and employees from any claim, action, or proceeding against the COUNTY or its agents, officers, or employees to attack, set aside, void, or annul the Project or any prior or subsequent related development approvals or Project condition imposed by the COUNTY or any of its agencies, departments, commissions, agents, officers. or employees concerning the said Project, or to impose personal liability against such agents, officers. or employees resulting from their involvement in the Project, which claim, action, or proceeding is brought within the time period provided by law, including any claim for private attorney general fees claimed by or awarded to any party from COUNTY. To the extent that COUNTY uses any of its resources responding to such claim, action, or proceeding, OWNER will reimburse COUNTY upon demand. Such resources include, but are not limited to, staff time, court costs, County Counsel's time at their regular rate for external or non-County agencies, or any other direct or indirect cost associated with responding to the claim, action, or proceedings.

(FORM188.PDS)                    —1—                    Revision Date
                                                        (1/15/03)

Exhibit F to Wind Energy Development and Option Agreement

The OWNER'S obligations under this agreement shall apply regardless of whether any other permits or entitlements are issued. These obligations shall be binding on successors and assigns of the real property benefitted by approval of the project, and OWNER shall so obligate all transferees and assigns.

2.      The COUNTY will promptly notify OWNER of any such claim, action, or proceeding and, if the COUNTY should fail to cooperate fully in the defense, the OWNER shall not thereafter be responsible to defend, indemnify, and hold harmless the COUNTY or its agents, officers, and employees pursuant to this condition.

3.      The COUNTY may, within its unlimited discretion, participate in the defense of any such claim, action, or proceeding if the COUNTY defends the claim, action, or proceeding in good faith.

4.      The OWNER shall not be required to pay or perform any settlement of such claim, action, or proceeding unless the settlement is approved in writing by OWNER.

5.      All notices to OWNER under this Agreement shall be deemed valid and effective five (5) calendar days following deposit in the United States mail, postage prepaid, by certified and/or registered mail, addressed to:

_____

_____

_____

All notices to COUNTY under this Agreement shall be deemed valid and effective when personally served upon the Planning Department Director or upon deposit in the United States mail, postage prepaid, by certified and/or registered mail, addressed to the Director, Kern County Planning Department, 2700 "M" Street, Suite 100, Bakersfield, California 93301.

6.      This Agreement represents the complete understanding between the parties with respect to matters set forth herein.

IN WITNESS WHEREOF, the parties hereto have duly caused this Agreement to be executed on the date hereinabove first written.

(FORM188.PDS)                    —2—                    Revision Date
                                                        (1/15/03)

Exhibit F to Wind Energy Development and Option Agreement